# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JOSEPH HLAVAC,** ) | **CASE NO.  1:12-CV-1438** |
| ) | |
| **Plaintiff,** ) | **MAGISTRATE JUDGE** |
| ) | **GEORGE J. LIMBERT** |
| v. ) | |
| ) | **MEMORANDUM AND OPINION** |
| **COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Joseph Hlavac Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in the November 24, 2010 decision in finding that Plaintiff was disabled from July 15, 2006 through January 23, 2008, but beginning January 24, 2008 his disability ended (Tr. 19-38). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

I.  PROCEDURAL HISTORY

On September 5, 2008, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382c, alleging disability as of July 15, 2006, due to a fractured back

(Tr. 108-111, 112-18, 154). His disability applications were denied initially and on reconsideration (Tr. 79-82, 83-85, 88-90, 91-93). Plaintiff requested an administrative hearing, which was held on August 3, 2010, at which time a vocational expert (VE), and Plaintiff, accompanied by counsel, testified (Tr. 39-74).

On November 24, 2010, the Administrative Law Judge (ALJ) issued a partially-favorable decision, finding that Plaintiff was disabled from July 15, 2006 through January 23, 2008, but beginning on January 24, 2008, his disability ended (Tr. 19-38). The ALJ explained that beginning on January 24, 2008, a medical improvement occurred related to Plaintiff's ability to perform sedentary work (Tr. 31), and based on medical vocational rule 201.21 of Appendix 2 to subpart P of 20 C.F.R. 404 (the grids), Plaintiff's age, education, work experience and RFC for a full range of sedentary work would direct a finding of "not disabled" (Tr. 35). The ALJ's decision became the final decision of the Commissioner on May 3, 2012, when the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff seeks judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.     STATEMENT OF FACTS

The Plaintiff was born on April 22, 1962 and was 44 years old, which is defined as a "younger individual, age 18-44" on the alleged disability onset date.

Plaintiff completed two years of college (Tr. 43, 159, 166), and has a 12-year history selling cars and trucks from 1983 to 2006 (Tr. 50, 52, 155, 159, 166, 219). In the course of working as a salesman, Plaintiff gained experience working as a sales manager and a finance

manager, and he also worked on cars, such as installing batteries and alternators (Tr. 51-53). In 2008, Plaintiff returned to part-time work as an independent telemarketer selling credit card services from May through August 2008 (Tr. 50, 54, 138-39, 154, 155, 161, 167).

### III.   SUMMARY OF MEDICAL EVIDENCE

On October 30, 2007 Plaintiff sought hypertension medication (Tr. 258). Plaintiff had not been seen in four years (Tr. 258). He related that he fell off a roof the previous year and had no follow-up for it (Tr. 259).

A week later, on November 6, 2007, Adrian M. Zachary, D.O. examined Plaintiff and confirmed that there was no evidence to suggest radiculopathy or myelopathy (Tr. 219). Dr. Zachary prescribed narcotic medication (Tr. 219).

An x-ray of Plaintiff's lumbar spine showed an "advanced healed" compression of the L4 with some secondary moderate degenerative changes between L3-4 and L4-5 (Tr. 221-23). A December 6, 2007 magnetic resonance imaging (MRI) also showed prior L4 burst fracture, disc osteophyte changes and facet arthropathy resulting in moderate canal stenosis at L3-4 and L4-5, and suspected encroachment of the left L4 foraminal nerve root (Tr. 205).

On January 3, 2008, Dr. Zachary noted that Plaintiff wanted to discuss possible treatment options and to review his MRI (Tr. 214). Plaintiff's positive examination findings were "limited" extension and flexion in his low back with positive straight leg raising on the right while sitting and muscle spasms in lower paraspinal muscles (Tr. 214). Plaintiff maintained normal gait, strength, and sensation (Tr. 214).

Dr. Zachary referred Plaintiff to an orthopedic surgeon, Mike Steinmetz, M.D., who

initially examined Plaintiff on January 23, 2008, and diagnosed mechanical back pain (Tr. 238). On examination, Plaintiff had normal visual inspection of his lumbar, thoracic and cervical spines (Tr. 238). Plaintiff had no pain upon palpation, and normal muscle bulk and tone (Tr. 238). Plaintiff had normal sensation and gait (Tr. 238). Dr. Steinmetz recommended surgical fixation but Plaintiff declined (Tr. 238).

In regards to complaints of pain, on January 31, 2008, at an examination in follow-up with hypertension, Plaintiff alleged that his back pain was four on a scale of ten, with ten being the worst (Tr. 255). In March 2008, Plaintiff reported that he was performing physical therapy and experiencing a decline in his symptoms (Tr. 236). In October 2008, a month after applying for disability benefits, Plaintiff reported at a hypertension follow-up examination, he was experiencing back pain of an eight on a scale of ten (Tr. 251). However, he did not undergo any follow-up treatment for his alleged back symptoms until September 2009.

Plaintiff had a one-time examination in November 2008 with Atiba Jackson, M.D., on behalf of the state disability determination service (DDS) (Tr. 279-85). Plaintiff alleged having constant pain which prevented him from sitting longer than 30 minutes or standing longer than 10 minutes (Tr. 280). Dr. Jackson, however, indicated that Plaintiff did not need an assistive walking aide (Tr. 281). Dr. Jackson, substantiated Plaintiff's previous negative clinical examination findings when he opined that Plaintiff's examination showed he had "great function and strength" (Tr. 281). Nevertheless, Dr. Jackson opined that Plaintiff was disabled based on Plaintiff's allegations that he had "so much" difficulty standing and sitting (Tr. 281).

4

On September 11, 2009, Dr. Zachary reported that he last saw Plaintiff in November 2007 (Tr. 338). Plaintiff reported misusing his prescribed medication, and Dr. Zachary confirmed that Plaintiff would not require stronger or more frequent narcotic medication, but instead a decreasing amount of medication (Tr. 336).  Dr. Zachary indicated that there was not a worsening in Plaintiff's overall condition (Tr. 337).  Plaintiff refused to provide a urine sample and Dr. Zachary ceased prescribing narcotic medication to Plaintiff (Tr. 337).

Subsequent diagnostic images obtained in September 2009 and in February 2011 confirm no significant change in Plaintiff's condition (Tr. 321, 339-41, 348-49).

In evidence submitted to the Appeals Council after the ALJ's November 2010 decision, Dr. Zachary confirmed that Plaintiff was last seen by him in September 2009 (Tr. 328).  Dr. Zachary indicated that Plaintiff's February 8, 2011 examination remained largely unchanged with continued normal strength, reflexes, and sensation (Tr. 328). Plaintiff had negative straight leg raising (Tr. 328).  Despite Plaintiff's request, Dr. Zachary refused prescribing narcotic medication (Tr. 328), and explained that if an updated MRI did not show any change, he was referring Plaintiff to a chronic pain program (Tr. 329). The February 2011 MRI confirmed that Plaintiff's condition had not changed (Tr. 348-49). The impression was: evolution of L4 vertebral body compression fracture, mild degenerative changes, and overall, stable remaining MRI lumbar spine (Tr. 349).

On March 16, 2011, Dr. Zachary reported that from a spinal standpoint, he was not providing any active treatment and refused narcotic pain medication to Plaintiff (Tr. 324).

On March 23, 2011, Plaintiff underwent an evaluation at the Cleveland Clinic Pain

5

Management Center at the Brunswick Family Health Center with Sameh R. Yonan, M.D., who supported Dr. Zachary's refusal for narcotic pain medication (Tr. 299).

On August 25, 2011, Carrie Diulus, M.D. examined Plaintiff and opined that Plaintiff wanted to find a doctor who will provide him with Vicodin (Tr. 349). Dr. Diulus diagnosed Plaintiff with drug-seeking behavior (Tr. 349). Dr. Diulus agreed with Dr. Steinmetz' March 2008 surgical recommendation but Plaintiff refused because he would need to stop smoking (Tr. 349). Dr. Diulus also confirmed that Plaintiff was unwilling to consider injections as an option to relieve his alleged pain, unwilling to undergo physical therapy, and unwilling to use the pain management program (Tr. 349). Dr. Diulus encouraged Plaintiff to avoid bed rest and maintain normal activity (Tr. 349).

## IV.     SUMMARY OF TESTIMONY

At the August 2010 administrative hearing, Plaintiff testified that he is able to drive, (he drove close to an hour from Medina (without stopping) to the hearing), and drives to complete errands (Tr. 42-43, 49). He also testified that he is able to prepare meals, do laundry, take out the trash, go shopping, and maintain his personal care, grooming and hygiene without assistance (Tr. 44-45).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.     An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b)

6

    and 416.920(b) (1992);

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c) (1992);

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See*, *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir.1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining

7

whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See*, *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See*, *Walters v. Commissioner of Social Security*, 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See*, *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters*, 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See*, *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Plaintiff raises two issues on appeal:

A. Whether the ALJ's assessment of Plaintiff's residual functional capacity after January 23, 2008 is supported by substantial evidence.

B. Whether Plaintiff has provided material new evidence which requires remand.

Plaintiff is a younger person who fell off a roof in July 2006 and sustained a compression fracture in his lower back. Plaintiff did not seek medical treatment until October 2007, more than a year after his alleged accident. At that time, imaging studies confirmed that Plaintiff's fracture had healed. Nonetheless, the administrative law judge (ALJ), who issued the Commissioner's final decision in this matter, gave Plaintiff the benefit of the doubt,

and awarded him a partially favorable decision, finding that he was disabled from July 15, 2006 through January 23, 2008.

Since January 24, 2008, clinical examination findings consistently confirm that Plaintiff has no pain on palpation of his spinous process and that visual inspection of his spine is normal. However, Plaintiff has some unspecified decreased range of motion in his lower back, but he retains normal muscle tone, bulk and strength in all muscle groups; normal sensory and reflex findings with a normal gait; and negative straight leg raising. Plaintiff's MRI also confirms that his condition is stable. His treatment has been conservative and infrequent, as the record shows his last outpatient treatment was in September 2009, a year prior to the ALJ's November 2010 decision. His treating source did not corroborate his claim of disability.

Plaintiff relies on a November 2008 disability opinion from a one-time consultative examiner, but the ALJ correctly concluded in giving little weight to that opinion, given the physician only recited Plaintiff's subjective complaints, and that his objective examination findings continued to show great function and strength. In addition, Plaintiff relies on February, March and August 2011 examinations (submitted to the Appeals Council after the ALJ's decision) which do not support a remand. The specialist who saw Plaintiff in August 2011 confirmed that Plaintiff's primary goal was to seek narcotic drug medication, and confirmed that Plaintiff continued to refuse any treatment other than use of narcotics. Despite Plaintiff's allegations, she recommended that Plaintiff maintain normal activity. Thus, Plaintiff did not present any new or material evidence that warrants a remand.

Plaintiff did not meet his burden of production and persuasion in this case in proving that he remained disabled after January 24, 2008. The social security regulations establish a two-step process for evaluating pain. *See,* 20 C.F.R. Section 416.929, SSR 96-7p. First, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See, id.; Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 117 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). In other words, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See, id.* Secondly, the ALJ must then determine the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See, id.*

Here, the ALJ reviewed the medical evidence, and concluded that, while the medical records documented the existence of any impairment that could reasonably be expected to produce symptoms of pain, the Plaintiff's allegations of disabling symptoms and limitations are not fully credible. The ALJ provided a reasonable rationale for denying Plaintiff's claim, mainly that Plaintiff's self-described degree and chronicity of symptoms were not fully credible (Tr. 33). The ALJ concluded that there are factors that undermine Plaintiff's credibility (Tr. 33).

In accordance with the requirements of Social Security Ruling 96-7p and 20 C.F.R. § 404.1529, the ALJ determined that Plaintiff's allegations of extreme limitations in standing and sitting were not supported by the objective medical evidence of record (Tr. 33). Orthopedic specialist Dr. Steinmetz, who examined Plaintiff on two occasions, and treating physician Dr. Zachary who treated him from March 2011 did not opine that Plaintiff had significant limitations in sitting and standing (Tr. 214, 219, 236, 238, 324, 328-29, 336-37). In fact, their examinations consistently showed normal strength, reflexes, sensation and walking. *Id.*

Furthermore, the ALJ noted that Plaintiff's treatment has been mainly conservative in nature, not requiring emergency care or hospitalization (Tr. 33). Plaintiff's reliance on the recommendation for surgery is not, in and of itself, equivalent to a finding of disability, and carries little weight, since Plaintiff refused all treatment options, other than use of narcotic pain medications. As noted by the ALJ, the last outpatient treatment was more than a year prior to the ALJ's decision (Tr. 33). Plaintiff argues that he did not undergo recommended treatment for lack of medical insurance, but no physician of record substantiated that claim.

This Court accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to ". . . try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). Credibility is very important in disability cases due to the secondary motive of gaining

11

benefits. Based upon substantial evidence, the ALJ correctly determined that Plaintiff was not fully credible, and that Plaintiff's appeal has several contradictions.

In determining Plaintiff's RFC and the weight given to the medical sources opinions, the ALJ has not committed error. Substantial evidence in the record supports the ALJ's decision that Plaintiff was not disabled after January 24, 2008.

It is the responsibility of the ALJ to determine whether Plaintiff meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1). The ALJ also gave proper weight to the single examination of Dr. Jackson, with a thorough explanation given to that opinion and the reasons given for the weight assigned (Tr. 33-34). *See, Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Furthermore, the ALJ correctly explained that Dr. Jackson's disability opinion was not entitled to controlling weight because he was not a treating source (Tr. 33). Only a treating physician's opinion is offered controlling weight and only when it is well-explained by the evidence of record and is not inconsistent with evidence of record. 20 C.F.R. § 404.1527(d)(2). In addition, Dr. Jackson's opinion that Plaintiff is disabled was not supported by his examination findings since they indicated that Plaintiff had great function and strength. It is also contradicted by the opinions of the state agency physicians(Tr. 33-34, 286-94).

Finally, Plaintiff contends that he has provided new, material evidence, and therefore remand is warranted, (Pl's. Br. at 12). However, that evidence is merely cumulative and not new. The additional evidence that Plaintiff submitted to the Appeals Council merely

12

corroborates the September 2009 opinion of treating source Dr. Zachary who ceased prescribing Plaintiff pain medication (Tr. 324, 336, 347). The consulting specialist in August 2011 diagnosed Plaintiff with drug seeking behavior (Tr. 350). This additional evidence would not change the outcome of this case.

## VI. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision and denies a remand. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) and, therefore, was not disabled beginning January 24, 2008. Hence, he is not entitled to DIB and SSI.

Dated: January 28, 2013　　　　　　　　　　　　*/s/George J. Limbert*
　　　　　　　　　　　　　　　　　　　　　　　**GEORGE J. LIMBERT**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**